1  Jeffrey L. Kessler *(pro hac vice)*
   jkessler@winston.com
2  A. Paul Victor *(pro hac vice)*
   pvictor@winston.com
3  Eva W. Cole *(pro hac vice)*
   ewcole@winston.com
4  Jeffrey J. Amato *(pro hac vice)*
   jamato@winston.com
5  Erica C. Smilevski *(pro hac vice)*
   esmilevski@winston.com
6  WINSTON & STRAWN LLP
   200 Park Avenue
7  New York, NY  10166-4193
   Telephone:     (212) 294-6700
8  Facsimile:      (212) 294-4700

9  Ian L. Papendick (SBN 275648)
   ipapendick@winston.com
10 WINSTON & STRAWN LLP
   101 California Street
11 San Francisco, CA  94111
   Telephone:     (415) 591-1000
12 Facsimile:      (415) 591-1400

13 Roxann E. Henry *(pro hac vice)*
   rhenry@mofo.com
14 MORRISON & FOERSTER LLP
   2000 Pennsylvania Avenue, Suite 6000
15 Washington, DC 20006
   Telephone:     (202) 887-1500
16 Facsimile:      (202) 887-0763

17 *Counsel for Panasonic Corporation, Panasonic Corporation of North America,
   SANYO Electric Co., Ltd., and SANYO North America Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION | Case No. 4:13-md-02420-YGR<br>MDL No. 2420 |
| This Document Relates to:<br><br>Case No. 4:15-cv-03443-YGR | **PANASONIC AND SANYO DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION** |
| MICROSOFT MOBILE INC. AND MICROSOFT MOBILE OY,<br>        Plaintiffs<br><br>v.<br><br>LG CHEM AMERICA, INC., et al.,<br>        Defendants | Oral Argument Requested<br><br>Date:       Nov. 17, 2015<br>Time:      2:00 p.m.<br>Before:    Hon. Yvonne Gonzalez Rogers<br>              Courtroom 1, 4th Floor |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ....................................................................................... v

STATEMENT OF THE ISSUE TO BE DECIDED.................................................................... vi

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

    I.    INTRODUCTION ................................................................................................ 1

    II.    BACKGROUND .................................................................................................. 1

        A.    Nokia, Microsoft's Predecessor, Is Bound by Valid and Enforceable Arbitration Agreements with Panasonic and Sanyo ......................................... 1

        B.    Microsoft's Claims Against Panasonic, Sanyo, and Other Defendants............ 3

    III.    LEGAL STANDARD........................................................................................... 4

    IV.    ARGUMENT........................................................................................................ 6

        A.    The New York Convention Requires Plaintiffs' Claims to Be Arbitrated ............................................................................................................ 6

            1.    Microsoft, Panasonic, and Sanyo Are All Bound by the PPAs ........... 6

            2.    The PPAs Are Governed by the New York Convention That Requires Arbitration................................................................................. 7

            3.    The PPAs Are Enforceable under the New York Convention and Require the Dismissal of this Action ........................................... 9

        B.    If Microsoft Disputes the Arbitrability of Any Aspect of Plaintiffs' Claims, That Dispute Must Be Decided by the Arbitrators ............................ 10

        C.    The Case Should Be Dismissed ................................................................... 12

    V.    CONCLUSION................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apollo Computer, Inc. v. Berg*,
 886 F.2d 469 (1st Cir. 1989) ..................................................................................................5, 10

*Balen v. Holland America Line Inc.*,
 583 F.3d 647 (9th Cir. 2009) ..............................................................................................4, 5, 7

*Boston Telecomms. Group, Inc. v. Deloitte Touche Tohmatsu*,
 278 F. Supp. 2d 1041 (N.D. Cal. 2003) ...............................................................................5, 12

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
 207 F.3d 1126 (9th Cir. 2000) ....................................................................................................8

*Edwards v. Metro. Life Ins. Co.*,
 No. C 10-03755 CRB, 2010 WL 5059553 (N.D. Cal. Dec. 6, 2010) .........................................5

*Fadal Machining Centers, LLC v. Compumachine, Inc.*,
 461 F. App'x. 630 (9th Cir. 2011) ............................................................................................10

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995) ............................................................................................................5, 11

*Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*,
 293 F.3d 1023 (7th Cir. 2002) ....................................................................................................6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 No. C-07-5944-SC, 2014 WL 7206620 (N.D. Cal. Dec. 18, 2014) .........................6, 8, 11, 12

*Ledee v. Ceramiche Ragno*,
 684 F.2d 184 (1st Cir. 1982) ..................................................................................................7, 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
 473 U.S. 614 (1985) ....................................................................................................................4

*Oracle America, Inc. v. Myriad Group A.G.*,
 724 F.3d 1069 (9th Cir. 2013) ..................................................................................................10

*Poponin v. Virtual Pro, Inc.*,
 No. C 06-4019 PJH, 2006 WL 2691418 (N.D. Cal. Sept. 20, 2006) ....................... 5, 10, 11, 12

*Prograph Int'l Inc. v. Barhydt*,
 928 F. Supp. 983 (N.D. Cal. 1996) .....................................................................................6, 7, 9

*Rent-A-Center, West, Inc. v. Jackson*,
 561 U.S. 63 (2010) ......................................................................................................................5

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Riley v. Kingsley Underwriting Agencies, Ltd.*,
    969 F.2d 953 (10th Cir. 1992) .................................................................................................7

*Rogers v. Royal Caribbean Cruise Line*,
    547 F.3d 1148 (9th Cir. 2008) .................................................................................................4

*Shany Co., Ltd. v. Crain Walnut Shelling, Inc.*,
    No. S-11-1112 KJM EFB, 2012 WL 1979244 (E.D. Cal. June 1, 2012) ................................10

*Shearson/Am. Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)..................................................................................................................5

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ........................................................................................5, 8, 12

*Sparling v. Hoffman Const. Co., Inc.*,
    864 F.2d 635 (9th Cir. 1988) ................................................................................................12

*Star-Kist Foods, Inc. v. Diakan Hope, SA*,
    423 F. Supp. 1220 (C.D. Cal. 1976) ........................................................................................6

*The Daiei, Inc. v. United States Shoe Corp.*,
    755 F. Supp. 299 (D. Haw. 1991) ..............................................................................5, 10, 11

*The Shaw Group, Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003)..............................................................................................5, 10

*Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*,
    497 F. App'x. 740 (9th Cir. 2012) .........................................................................................10

**STATUTES**

9 U.S.C. §§ 201-208 ........................................................................................................................4

9 U.S.C. § 202..................................................................................................................................7

9 U.S.C. § 206......................................................................................................................... passim

Federal Arbitration Act....................................................................................................................4

New York Convention, art. II, § 3 ...................................................................................................9

Sherman Act.........................................................................................................................v, 11, 12

**OTHER AUTHORITIES**

Rule 12(b)(1) of the Federal Rules of Civil Procedure....................................................................v

Rule 12(b)(6) of the Federal Rules of Civil Procedure....................................................................v

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

iii
PANASONIC & SANYO DEFS' MOTION TO DISMISS AND COMPEL ARBITRATION
CASE NO. 4:15-cv-03443-YGR; MASTER FILE NO. 4:13-cv-02420-YGR

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

ICC Rules (2012), art. 6.3 ..................................................................................................10

Nokia Corporate Communications, *Nokia's Finnish Subsidiaries Merged* (Oct. 1, 2001),
   http://company.nokia.com/en/news/press-releases/2001/10/01/nokias-finnish-
   subsidiaries-merged ...................................................................................................2, 6

Nokia Corporation, Annual Report 71 (Form 20-F) (Mar. 8, 2012) ...............................................6

UNCITRAL, *Status—Convention on the Recognition and Enforcement of Foreign Arbitral
   Awards (New York, 1958)*,
   http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html ......8

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

iv
PANASONIC & SANYO DEFS' MOTION TO DISMISS AND COMPEL ARBITRATION
CASE NO. 4:15-cv-03443-YGR; MASTER FILE NO. 4:13-cv-02420-YGR

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 17, 2015, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Yvonne Gonzalez Rogers, defendants Panasonic Corporation, Panasonic Corporation of North America (together, "Panasonic"), SANYO Electric Co., Ltd., and SANYO North America Corporation[1] (together, "Sanyo") will and hereby do move the Court, pursuant to the New York Convention, 9 U.S.C. § 206, and Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing plaintiffs Microsoft Mobile Inc.'s and Microsoft Mobile Oy's (together, "Plaintiffs" or "Microsoft") complaint against Panasonic and Sanyo in its entirety, and compelling Plaintiffs to arbitrate any claims that they may seek to pursue against Panasonic and Sanyo.

Microsoft's complaint must be dismissed because its sole Sherman Act claim against Panasonic and Sanyo is subject to arbitration. Microsoft's predecessor, Nokia Corporation and its subsidiary Nokia Inc. (together, "Nokia"), which Microsoft acquired its claim from, entered into valid and enforceable arbitration agreements that broadly cover all "disputes arising . . . out of or in connection with" its commercial relationship with Panasonic and Sanyo relating to Lithium Ion Batteries. Those agreements further require that any disputes as to the scope of the arbitration agreements and the arbitrability of any claim must be submitted to the arbitrators for resolution. Accordingly, Microsoft is barred from prosecuting this lawsuit in court against Panasonic and Sanyo.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declaration of Jeffrey J. Amato ("Amato Decl.") and accompanying exhibits, argument of counsel, and such other matters as the Court may consider.

---

[1] As of April 1, 2015, SANYO North America Corporation ceased to exist following its merger with Panasonic Corporation of North America.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

v
PANASONIC & SANYO DEFS' MOTION TO DISMISS AND COMPEL ARBITRATION
CASE NO. 4:15-cv-03443-YGR; MASTER FILE NO. 4;13-cv-02420-YGR

**STATEMENT OF THE ISSUE TO BE DECIDED**

Whether Microsoft's complaint must be dismissed as a result of the arbitration agreements entered into between Microsoft's predecessor, Nokia, and Panasonic and Sanyo, respectively, which require arbitration of "any disputes arising . . . out of or in connection with" Nokia's relationship with Panasonic and Sanyo regarding Lithium Ion Batteries.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Microsoft has chosen an improper forum for its claims against Panasonic and Sanyo.  Nokia executed two Product Purchase Agreements ("PPAs") with Panasonic and Sanyo, respectively, both in the year 2000, concerning Nokia's purchase of Lithium Ion Battery products from Panasonic and Sanyo.  Both agreements remain in effect to this day, and contain broad arbitration provisions that require arbitration of any disputes arising out of or in connection with those commercial relationships.  The terms of the agreements were drafted by Nokia and specifically entered into with Panasonic and Sanyo to choose arbitration as the exclusive forum for resolving any future legal disputes, and these broad arbitration clauses clearly encompass the antitrust claims Microsoft now asserts based on allegations of a Lithium Ion Battery price-fixing conspiracy among Panasonic, Sanyo, and alleged co-conspirators.  This action must thus be dismissed.

Microsoft has no lawful basis to seek to evade the broad arbitration agreements that its predecessor Nokia agreed to.  Indeed, by the express terms of the agreements, as the successor in interest to Nokia, Microsoft remains bound by the PPAs, including the obligation to arbitrate any disputes arising out of or in connection with its commercial relationships with Panasonic and Sanyo regarding Lithium Ion Batteries.

Finally, even if Microsoft were to dispute the arbitrability of all or some portion of the antitrust claims it has asserted in this case, this Court is not the proper venue to resolve any such dispute.  To the contrary, the arbitration provisions call for arbitrators appointed under and acting pursuant to the Rules of the International Chamber of Commerce ("ICC Rules") to decide any disputes over the arbitrability of any claims.  Accordingly, as several decisions in this District have held before, there is nothing for this Court to do but to dismiss this action against Panasonic and Sanyo and enter an order requiring that any disputes between the parties be resolved in arbitration.

## II.   BACKGROUND

### A.   Nokia, Microsoft's Predecessor, Is Bound by Valid and Enforceable Arbitration Agreements with Panasonic and Sanyo

Nokia is bound by two PPAs with Panasonic and Sanyo containing enforceable arbitration

*Winston & Strawn LLP*
*101 California Street*
*San Francisco, CA  94111-5802*

1
PANASONIC & SANYO DEFS' MOTION TO DISMISS AND COMPEL ARBITRATION
CASE NO. 4:15-cv-03443-YGR; MASTER FILE NO. 4:13-cv-02420-YGR

agreements. There is a PPA between Nokia and Panasonic effective starting on March 6, 2000, as amended in 2003, 2008, and 2010 (the "Nokia-Panasonic PPA").[2] *See* Amato Decl., Exs. A-D. There is also a PPA between Nokia and Sanyo effective starting on January 10, 2000, as amended in 2003, 2008, and 2010 (the "Nokia-Sanyo PPA").[3] *See* Amato Decl., Exs. E-H. Both PPAs took effect after the representatives of Nokia Mobile Phones Ltd. signed the agreements in Salo, Finland. *See* Nokia-Panasonic PPA, at 22-23; Nokia-Sanyo PPA, at 26. Both use the same language to explain their purpose: "The purpose of this Agreement is to agree upon the terms and conditions which are to be applied globally in all sale and purchase of Product(s) which SELLER [Panasonic or Sanyo] shall sell and deliver to BUYER [Nokia] . . . ." Nokia-Panasonic PPA § 2.1; Nokia-Sanyo PPA § 2.1. Both agreements also expressly supersede "all former and previous agreements." Nokia-Panasonic PPA § 32.1; Nokia-Sanyo PPA § 32.1. Additionally, Nokia Corporation, on behalf of itself and all its Affiliates, signed all the subsequent amendments to the two PPAs. *See* Amato Decl., Exs. B-D, F-H.

The PPAs contain broad arbitration clauses that clearly and unambiguously set forth arbitration terms that the parties agreed upon. Further, both PPAs expressly incorporate "the Rules of Arbitration of the International Chamber of Commerce." *See* Nokia-Panasonic PPA § 31; Nokia-Sanyo PPA § 31.

Specifically, the arbitration clauses of the Nokia-Panasonic PPA set the following terms for "any disputes arising . . . out of or in connection with" the PPA:

> 31.2   Any disputes arising between the Parties out of or in connection with this Agreement or the interpretation, breach or enforcement of this Agreement shall be

---

[2] The Nokia-Panasonic PPA was entered into between (1) Nokia Mobile Phones Ltd., a Finnish corporation, and "Affiliated Companies" of Nokia Corporation and (2) Matsushita Electric Industrial Co., Ltd. ("MEI"), (3) Matsushita Battery Industrial Co., Ltd. ("MBI"), both Japanese corporations, and "Affiliated Companies." Nokia-Panasonic PPA, at 1, § 1 (definition of "Affiliated Company"), App. A. MEI later changed its name to Panasonic Corporation and MBI (which had been a wholly-owned subsidiary of MEI) became an internal division of Panasonic Corporation on October 1, 2008. Compl. ¶¶ 26-27. Nokia Mobile Phones Ltd. was dissolved and merged into Nokia Corporation on October 1, 2001. *See* News Release, Nokia Corporate Communications, Nokia's Finnish Subsidiaries Merged (Oct. 1, 2001), http://company.nokia.com/en/news/press-releases/2001/10/01/nokias-finnish-subsidiaries-merged.

[3] The Nokia-Sanyo PPA was entered into between (1) Nokia Mobile Phones Ltd. and "Affiliated Companies" of Nokia Corporation and (2) SANYO Electric Co. Ltd. and its "Affiliated Companies." Nokia-Sanyo PPA, at 1, § 1 (definition of "Affiliated Company"), App. A.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

> resolved and settled by arbitration in accordance with the Rules of Arbitration of the International Chamber of Commerce. The arbitration shall be held in the city of Helsinki, Finland, if the defendant shall be BUYER, and in Tokyo, Japan, if the defendant shall be SELLER. The language used in arbitration, including the language of the proceedings, the language of the decision, and the reasons supporting it, shall be English.
>
> 31.3   The Parties agree to recognise the decision of the arbitrators as final, binding and executable. The arbitration shall be the exclusive remedy of the Parties to the dispute regarding claims or counterclaims presented to the arbitrators.

Nokia-Panasonic PPA § 31.

The arbitration clauses of the Nokia-Sanyo PPA set the terms for "any disputes arising . . . out of or in connection with" the PPA in equally clear and unambiguous language:

> 31.2   Any disputes arising between the Parties out of or in connection with this Agreement or the interpretation, breach or enforcement of this Agreement shall be resolved and settled by arbitration in the city of London, England, in accordance with the rules of arbitration of the International Chamber of Commerce. The language used in arbitration, including the language of the proceedings, the language of the decision, and the reasons supporting it, shall be English.
>
> 31.3   The Parties agree to recognise the decision of the arbitrators as final, binding and executable. The arbitration shall be the exclusive remedy of the Parties to the dispute regarding claims or counterclaims presented to the arbitrators.

Nokia-Sanyo PPA § 31.

**B.   Microsoft's Claims Against Panasonic, Sanyo, and Other Defendants**

In 2013, Microsoft acquired Nokia Corporation's mobile device business and any claims Nokia Corporation may have had based on purchases of the Batteries at issue. Compl. ¶¶ 1, 14-15. As detailed in the Complaint before this Court,[4] this transaction was executed through a 2013 Stock and Asset Purchase Agreement between Nokia Corporation and Microsoft International Holdings B.V. and the Stock and Asset Purchase Agreement was assigned to Microsoft Mobile Oy. *Id.* ¶¶ 14-15.

Microsoft alleges that Panasonic, Sanyo and other defendants engaged in a conspiracy to fix the prices of Lithium Ion Batteries and Cells[5] that purportedly took place from January 1, 2000 to

---

[4] On September 25, 2015, Microsoft Mobile Oy (Ltd) filed a claim in the Chancery Division of the High Court of Justice in England against Panasonic Corp., SANYO Electric Co., Ltd., and other defendants, which seeks damages based on Microsoft's global purchases of lithium ion batteries, including claims under U.S. law based on the purchases at issue in this action. The PPAs at issue in this Motion also require arbitration of Microsoft's claims in the English action.

[5] "Lithium Ion Batteries" are cylindrical, prismatic, or polymer batteries incorporating rechargeable "Lithium Ion Battery Cells." Compl. ¶ 6. Lithium Ion Battery Cells are the main components of

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

May 31, 2011.  *Id.* ¶ 1.  Microsoft alleges that its predecessors Nokia Inc. and Nokia Corporation purchased Lithium Ion Batteries directly from Panasonic, Sanyo and other defendants during the relevant period at artificially-inflated prices in the United States and throughout the world.  *Id.*

Microsoft claims that certain Panasonic and Sanyo entities participated in the purported conspiracy, including Panasonic Corporation, formerly known as Matsushita Electric Industrial Co., Ltd. ("MEI"), Matsushita Battery Industrial Co., Ltd. ("MBI," which was a wholly-owned subsidiary of MEI and then an internal division of Panasonic Corporation), Panasonic Corporation of North America ("PNA"), SANYO Electric Co., Ltd., and SANYO North America Corporation ("SNA").  *Id.* ¶¶ 26-32, 91, 96-98.  Sanyo Electric Co., Ltd. became a wholly-owned subsidiary of Panasonic Corporation on April 1, 2011.  *Id.* ¶ 30.  Microsoft acquired its claims following its acquisition of Nokia Corporation's mobile device business, and is seeking damages in this Court related to Lithium Ion Batteries shipped by Defendants to the United States.  *Id.* ¶¶ 1, 5.

### III.     LEGAL STANDARD

"The Supreme Court has consistently recognized 'the emphatic federal policy in favor of arbitral dispute resolution.'"  *Balen v. Holland America Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  Congress codified the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") into the second chapter of the Federal Arbitration Act, 9 U.S.C. §§ 201-208, and expressly directed courts to enforce arbitration agreements "in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."  *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1152, 1154 (9th Cir. 2008) (quoting 9 U.S.C. § 206).  Since the implementation of the New York Convention by amendment of the Federal Arbitration Act in 1970, the federal policy in favor of arbitral dispute resolution "applies with special force in the field of international commerce."  *Mitsubishi*, 473 U.S. at 631.

---

Lithium Ion Batteries.  A cell includes the cathode, anode, and electrolyte.  Individual or multiple cells are assembled or "packed" inside an enclosure.  In some cases, certain protection circuitry is also added inside the enclosure.  *Id.* ¶ 7.

The New York Convention requires federal courts to compel arbitration where four factors are present: (1) a written agreement that (2) includes a provision that requires arbitration in the territory of a signatory of the New York Convention, that (3) arises out of a commercial legal relationship, and (4) has an international element. *See Balen*, 583 F.3d at 654-55.

Here, the Court's inquiry is even narrower because "parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citations and internal quotation marks omitted). "A court must defer to an arbitrator's arbitrability decision" when "there is clear and unmistakable evidence" that the parties agreed that arbitrators should decide arbitrability. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995) (internal quotation marks omitted). An agreement to resolve disputes "under the Rules of Arbitration of the International Chamber of Commerce" provides clear and unmistakable evidence that the parties have also agreed that questions of arbitrability must be submitted to arbitration as the ICC Rules provide for this. *Poponin v. Virtual Pro, Inc.*, No. C 06-4019 PJH, 2006 WL 2691418, at *1, 9 (N.D. Cal. Sept. 20, 2006) (citing *The Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121-22 (2d Cir. 2003); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989); *The Daiei, Inc. v. United States Shoe Corp.*, 755 F. Supp. 299, 303 (D. Haw. 1991)).

Moreover, "[i]n a motion to compel arbitration, the burden of proof is on the party asserting jurisdiction and contesting arbitration." *Edwards v. Metro. Life Ins. Co.*, No. C 10-03755 CRB, 2010 WL 5059553, at *4 (N.D. Cal. Dec. 6, 2010) (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). Accordingly, where, as here, there is a valid, enforceable agreement providing for the arbitration of any disputes, claims relating to the agreement may not proceed in the courts. Courts in the Ninth Circuit regularly and consistently enforce arbitration agreements and dismiss cases where there are claims that are subject to arbitration agreements. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (affirming order compelling arbitration and dismissing the complaint); *Boston Telecomms. Group, Inc. v. Deloitte Touche Tohmatsu*, 278 F. Supp. 2d 1041, 1049 (N.D. Cal. 2003) (dismissing all claims and referring to arbitration under 9

U.S.C. § 206); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 7206620, at *4 (N.D. Cal. Dec. 18, 2014) (granting motion to dismiss and compel arbitration).

## IV. ARGUMENT

### A. The New York Convention Requires Plaintiffs' Claims to Be Arbitrated

#### 1. Microsoft, Panasonic, and Sanyo Are All Bound by the PPAs

All the parties in this action are bound by the PPAs. Nokia Mobile Phones Ltd., a signatory to both PPAs, was dissolved and merged into Nokia Corporation in 2001. *See* News Release, Nokia Corporate Communications, Nokia's Finnish Subsidiaries Merged (Oct. 1, 2001), http://company.nokia.com/en/news/press-releases/2001/10/01/nokias-finnish-subsidiaries-merged. As a successor of the signatory company, Nokia Corporation is bound by the PPAs. *See Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 991 (N.D. Cal. 1996) (finding that the arbitration would include a nonsignatory successor under clauses signed by the corporation whose liabilities the successor was alleged to have assumed); *see also Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002) (affirming that a successor company was bound by the arbitration agreement signed by the entity that had been merged into the successor company). As of December 31, 2011, Nokia Inc., a wholly-owned subsidiary of Nokia Corporation, was an "Affiliated Company" according to the definition and bound by the PPAs. *See* Nokia Corporation, Annual Report 71 (Form 20-F) (Mar. 8, 2012); Nokia-Panasonic PPA § 1 (definition of "Affiliated Company"); Nokia-Sanyo PPA § 1 (definition of "Affiliated Company"). In addition, Nokia Corporation and all of its Affiliates are parties to the three Amendments of each PPA, which affirm the parties' agreements that the terms and conditions of the original PPAs remain "valid and in full force and effect" unless they are expressly modified. *See* Amato Decl., Exs. B-D; F-H.

Plaintiffs Microsoft Mobile Oy and Microsoft Mobile Inc. are successors to Nokia Corporation and Nokia Inc. respectively. Compl. ¶ 15 ("Microsoft Mobile Oy acquired claims held by Nokia Corporation based on Nokia Corporation's purchase of certain of the Batteries at issue in this Complaint."); Compl. ¶ 14 ("Microsoft Mobile Inc. was once Nokia Inc."). By acquiring the claims related to the PPAs from Nokia, Microsoft also assumes the obligations in the arbitration agreements. *See Star-Kist Foods, Inc. v. Diakan Hope, SA*, 423 F. Supp. 1220, 1222-23 (C.D. Cal.

1  1976) (holding that the arbitration agreement was valid and enforceable after a settlement agreement
2  and assignments).

3  Panasonic Corporation (which entered the PPA under its previous name MEI) is also the
4  successor of MBI, which entered the PPA when it was a separate entity and later became an internal
5  division of Panasonic Corporation on October 1, 2008.  Compl. ¶¶ 26-27.  PNA is a wholly-owned
6  subsidiary of Panasonic Corporation and SNA was a wholly-owned subsidiary of Sanyo Electric
7  Co., Ltd.  *Id.* ¶¶ 28, 31.  Both PNA and SNA are "Affiliated Companies" according to the definitions
8  set forth in the PPAs and are bound by the PPAs.  *See* Nokia-Panasonic PPA § 1 (definition of
9  "Affiliated Company"); Nokia-Sanyo PPA § 1 (definition of "Affiliated Company"). Both Plaintiffs
10 and the Panasonic and Sanyo defendants are thus all governed by the PPAs and the agreements to
11 arbitrate contained in the PPAs.

### 2. The PPAs Are Governed by the New York Convention That Requires Arbitration

14 The New York Convention applies to "[a]n arbitration agreement . . . arising out of a legal
15 relationship, whether contractual or not, which is considered as commercial."  *Balen*, 583 F.3d at
16 654 (quoting 9 U.S.C. § 202).  The Ninth Circuit has adopted a test with four factors to determine
17 whether to enforce an arbitration agreement under the New York Convention, 9 U.S.C. § 206.  The
18 four factors "require that (1) there is an agreement in writing within the meaning of the Convention;
19 (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the
20 agreement arises out of a legal relationship, whether contractual or not, which is considered
21 commercial; and (4) a party to the agreement is not an American citizen, or that the commercial
22 relationship has some reasonable relation with one or more foreign states."  *Balen*, 583 F.3d at 654-
23 55; *Prograph Int'l Inc.*, 928 F. Supp. at 988 (performing a "very limited inquiry" to decide the same
24 four factors) (quoting *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 959 (10th Cir.
25 1992); *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186-87 (1st Cir. 1982)).

26 The PPAs and the agreements to arbitrate contained therein meet all four of these factors.
27 *First*, both PPAs are in writing and signed, and include clear and unambiguous agreements to
28 arbitrate.  The parties expressly chose the all-encompassing language—"Any disputes arising . . . out

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

7
PANASONIC & SANYO DEFS' MOTION TO DISMISS AND COMPEL ARBITRATION
CASE NO. 4:15-cv-03443-YGR; MASTER FILE NO. 4:13-cv-02420-YGR

of or in connection with this Agreement"—to give a broad scope to the arbitration clauses. The Ninth Circuit has previously interpreted the commonly used arbitration phrases which appear in the PPAs—"arising out of" and "in connection with"—as providing for "broad and far reaching" agreements to arbitrate. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) ("The parties' arbitration clause is broad and far reaching: 'Any dispute, controversy or claim **arising out of** or relating to the validity, construction, enforceability or performance of this Agreement shall be settled by binding Alternate Dispute Resolution . . . .'") (emphasis added); *Simula, Inc.*, 175 F.3d at 721 (concluding that the language "arising **in connection with**" reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract) (emphasis added). Courts consistently hold that antitrust claims, in particular, are encompassed by such broad language in arbitration agreements. *Simula, Inc.*, 175 F.3d at 721, 723 (holding that the antitrust claims were "fully arbitrable" under an arbitration clause with the language "arising in connection with"); *see also In re CRT*, 2014 WL 7206620, at *4 (dismissing the complaint and compelling arbitration of all antitrust claims against Panasonic).

*Second*, the places of the arbitration for these claims against Panasonic and Sanyo are provided to be Tokyo, Japan and London, England. Nokia-Panasonic PPA § 31.2; Nokia-Sanyo PPA § 31.2. Both Japan and the United Kingdom are signatories to the New York Convention.[6]

*Third,* the terms of the PPAs themselves, whose purpose is "to agree upon the terms and conditions which are to be applied globally in all sale and purchase of Product(s) which SELLER shall sell and deliver to BUYER," establish that the parties' relationship was and is commercial. *See* Nokia-Panasonic PPA § 2.1; Nokia-Sanyo PPA § 2.1.

---

[6] *See Status—Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958)*, UNCITRAL, http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html (last visited Oct. 7, 2015). If the defendant in an arbitration with Panasonic were the successor to Nokia, the arbitration would be in Helsinki, Finland, another signatory to the New York Convention.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

*Finally*, the parties to each PPA include foreign citizens—corporations formed under the laws of Finland (Nokia Corporation) and Japan (Panasonic Corporation and SANYO Electric Co., Ltd.).  *See* Nokia-Panasonic PPA, at 1; Nokia-Sanyo PPA, at 1.

### 3. The PPAs Are Enforceable under the New York Convention and Require the Dismissal of this Action

Because the agreements between Plaintiffs and the Panasonic and Sanyo defendants contain broad, valid agreements to arbitrate that are enforceable under the New York Convention, Plaintiffs are prohibited from pursuing their claims in this Court.  *See* 9 U.S.C. § 206.  According to the New York Convention, the court "shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *Prograph Int'l Inc.*, 928 F. Supp. at 987-88 (quoting New York Convention, art. II, § 3).  The exception language of the Convention is to be interpreted narrowly "to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale." *Id*. at 989 (quoting *Ledee*, 684 F.2d at 187).

Microsoft has no basis to contend that the PPAs, which were drafted and entered into by Nokia to govern any disputes relating to its commercial relationship with Panasonic and Sanyo regarding Lithium Ion Batteries, are "null and void, inoperative or incapable of being performed." *See* Compl. ¶ 5; New York Convention, art. II, § 3.  In fact, Nokia appears to have been the propounding party with respect to the PPAs, as demonstrated by the fact that very similar provisions were entered into with Panasonic and Sanyo during a period when the two companies were unrelated.  Although all the contracting parties were large and sophisticated multi-national corporations, Nokia, a dominant customer of battery products for mobile phones during the relevant period, successfully obtained two PPAs that share almost identical structure and arbitration language with Panasonic and Sanyo.  For example, the two PPAs have exactly the same number of sections (33 in total, plus sub-sections) and the same headings for the sections and sub-sections, word for word. *See* Amato Decl., Ex. A (Table of Contents); Amato Decl., Ex. E (Table of Contents).  Most definitions ("Effective Date," "Incoterms 1990," etc.) are the same and the rest (*e.g.*, "Specification(s)") only have small variations.  *See* Nokia-Panasonic PPA § 1; Nokia-Sanyo PPA §

1. Both PPAs specifically choose the ICC Rules in the arbitration clauses. Nokia-Panasonic PPA § 31.2; Nokia-Sanyo PPA § 31.2. According to the dates of the signatures of the PPAs, Nokia signed off several weeks after its counterparts at Panasonic and Sanyo, reserving the final approval of the PPAs to itself because the effective date for both PPAs is "the last date of signature of this Agreement." *See* Nokia-Panasonic PPA, at 22-23; Nokia-Sanyo PPA, at 26.

### B. If Microsoft Disputes the Arbitrability of Any Aspect of Plaintiffs' Claims, That Dispute Must Be Decided by the Arbitrators

The arbitration clauses in both PPAs expressly incorporate the ICC Rules, which provide for the arbitrators to decide any disputes regarding the scope of the claims subject to arbitration. ICC Rules (2012), art. 6.3 ("any question of jurisdiction . . . shall be decided directly by the arbitral tribunal"). Courts in the Ninth Circuit and elsewhere have consistently held that incorporation of arbitral rules, such as the ICC Rules, that vest the arbitrators with the authority to decide their own jurisdiction, including questions of arbitrability, establishes the parties' clear and unmistakable intent to submit any disputes concerning arbitrability of claims to the arbitrators—not the court—for determination. *See Poponin*, 2006 WL 2691418, at *9 (holding that by agreeing to arbitration under the ICC Rules, the parties clearly and unmistakably agreed that any questions of arbitrability would be submitted to arbitration) (citing *The Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121-22 (2d Cir. 2003); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989); *The Daiei, Inc. v. United States Shoe Corp.*, 755 F. Supp. 299, 303 (D. Haw. 1991)); *Shany Co., Ltd. v. Crain Walnut Shelling, Inc.*, No. S-11-1112 KJM EFB, 2012 WL 1979244, at *9 (E.D. Cal. June 1, 2012) ("In this case, the ICC rules, incorporated into [the seller]'s terms and conditions, give the arbitrator the authority to determine arbitrability."); *see also Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013) ("as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator"); *Fadal Machining Centers, LLC v. Compumachine, Inc.*, 461 F. App'x. 630, 632 (9th Cir. 2011) (finding that the arbitration clause that incorporated the AAA Rules clearly and unmistakably delegated the question of arbitrability to the arbitrator); *Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*, 497 F. App'x.

1   740, 742 (9th Cir. 2012) (holding that the parties' incorporation of the JAMS rules established their

2   clear and unmistakable intent to submit the issue of arbitrability to arbitration); *In re CRT*, 2014 WL

3   7206620, at *3-4 (finding that any disputes over the scope of the claims subject to arbitration shall

4   be decided by the arbitrators under the arbitral rules selected by the parties in their agreement).

5         The above summary of the case law on this issue is consistent with the arguments that Nokia

6   previously presented to this Court in the *TFT-LCD* litigation:

> 7,8,9,10,11   The threshold determination of arbitrability is to be resolved by the court, absent clear and unmistakable intent by the parties that it should be decided by the arbitrator. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-55 (1995). Under *First Options* and its progeny, courts have held that the incorporation of a particular set of arbitration rules, such as the AAA Rules or the ICC Rules, evinces the parties' clear and unmistakable intent that the question of arbitrability be decided by the arbitrator, not the court. *See, e.g.*, *Daiei, Inc. v. United States Shoe Corp.*, 755 F. Supp. 299, 303 (D. Haw. 1991); *Poponin v. Virtual Pro, Inc.*, 2006 WL 2691418, at *9 (N.D. Cal. Sept. 2006).

12   Brief of Nokia Corporation and Nokia Inc. at 14 n.7, *In re TFT-LCD (Flat Panel) Antitrust Litig.*,

13   No. 3:07-md-01827-SI (N.D. Cal. Jan. 21, 2011), ECF No. 2355. In that case, when the defendant

14   asked the court to determine whether Nokia's claims were arbitrable, Nokia argued that the request

15   to the court was a waiver of "any right to tender the arbitrability analysis to an arbitrator." *Id.*

16         Here, by contrast, Panasonic and Sanyo are not waiving any of their rights under the PPAs

17   and specifically assert the "right to tender the arbitrability analysis" to the arbitrators to the extent

18   that there is any dispute by Microsoft over the scope of arbitrability. The parties expressly agreed to

19   have any dispute resolved by arbitration "in accordance with the Rules of Arbitration of the

20   International Chamber of Commerce." Nokia-Panasonic PPA § 31.2; Nokia-Sanyo PPA § 31.2.

21   Therefore, to the extent there is any argument by Microsoft that its Sherman Act claim is not subject

22   to arbitration, that determination must be made by the arbitrators, not this Court. *See In re CRT*,

23   2014 WL 7206620, at *4 (dismissing the complaint and finding that "by incorporating the rules of

24   procedure of the AAA and JCAA, the parties 'clearly and unmistakably' provided for arbitration of

25   arbitrability"); *Poponin*, 2006 WL 2691418, at *12 (granting defendant's motion to dismiss "because

26   the parties agreed to arbitrate any disputes arising under the Agreement pursuant to the ICC Rules of

27   Arbitration, which provide that arbitrability is for the arbitrators to decide").

28

1   The recent decision in *In re CRT* is instructive.  There, because the court found that it "lack[ed] jurisdiction to determine arbitrability, and the parties agreed to resolve such issues before the arbitrators and pursuant to" the chosen arbitral rules that provide for the arbitrator to decide questions of arbitrability, the court dismissed the complaint in its entirety, including any relief sought relating to Panasonic's asserted joint and several liability for the actions of its alleged co-conspirators. *In re CRT*, 2014 WL 7206620, at *4.

### C. The Case Should Be Dismissed

Because there are valid, enforceable arbitration agreements covering the scope of the single Sherman Act claim asserted against Panasonic and Sanyo, the Court must dismiss Microsoft's complaint against Panasonic and Sanyo in its entirety. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming order dismissing all claims subject to arbitration); *Simula, Inc.*, 175 F.3d at 726 (affirming order compelling arbitration and dismissing the complaint); *Boston Telecomms. Group, Inc.*, 278 F. Supp. 2d at 1049 (dismissing all claims and referring to arbitration under 9 U.S.C. § 206).  Indeed, the arbitration agreement divests this Court of jurisdiction to decide any other issues. *See In re CRT*, 2014 WL 7206620, at *4.

The parties have "clearly and unmistakably" agreed to arbitrate even arbitrability disputes by incorporating the ICC Rules. *See, e.g.*, *Poponin*, 2006 WL 2691418, at *9.  Accordingly, all of Microsoft's claims against Panasonic and Sanyo must be dismissed. *In re CRT*, 2014 WL 7206620, at *4.

### V. CONCLUSION

For all of the foregoing reasons, Panasonic and Sanyo respectfully request that the Court grant this Motion to dismiss and compel arbitration.

DATED:   October 13, 2015

By: /s/ Jeffrey L. Kessler
Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
A. Paul Victor (*pro hac vice*)
pvictor@winston.com
Eva W. Cole (*pro hac vice*)
ewcole@winston.com
Jeffrey J. Amato (*pro hac vice*)
jamato@winston.com

Erica C. Smilevski (*pro hac vice*)
esmilevski@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY  10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

Ian L. Papendick (SBN 275648)
ipapendick@winston.com
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400

Roxann E. Henry (*pro hac vice*)
**MORRISON & FOERSTER LLP**
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
rhenry@mofo.com
Telephone:  (202) 887-1500
Facsimile:   (202) 887-0763

*Counsel for Panasonic Corporation,*
*Panasonic Corporation of North America,*
*SANYO Electric Co., Ltd., and*
*SANYO North America Corporation*

**Winston & Strawn LLP**
101 California Street
San Francisco, CA  94111-5802