James C. Grant (*pro hac vice*)
Valarie C. Williams (*pro hac vice*)
B. Parker Miller (*pro hac vice*)
Edward P. Bonapfel (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone:  404-881-7000
Facsimile:  404-881-7777

Lance A. Termes
Ryan W. Koppelman
**ALSTON & BIRD LLP**
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303-2282
Telephone:  650-838-2000
Facsimile:  650-838-2001

*Attorneys for Microsoft Mobile Inc. and Microsoft Mobile Oy*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Microsoft Mobile, Inc. et al. v. LG Chem America Inc. et al.* | Case No. 4:13-md-02420-YGR (MDL)<br><br>Case No. 4:15-cv-03443-YGR<br><br>**MICROSOFT MOBILE INC.'S AND MICROSOFT MOBILE OY'S RESPONSE IN OPPOSITION TO PANASONIC AND SANYO DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION**<br><br>Date:    December 8, 2015<br>Time:   2:00 p.m.<br>Before:  Hon. Yvonne Gonzalez Rogers<br>         Courtroom 1, 4th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

INTRODUCTION AND STATEMENT OF ISSUES .................................................................. 1

STATEMENT OF RELEVANT FACTS ................................................................................ 2

ARGUMENT .................................................................................................................. 3

    I.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL
        ARBITRATION OF THE JOINT AND SEVERAL CLAIMS, BECAUSE
        DEFENDANTS' DEMAND FOR ARBITRATION OF THOSE CLAIMS IS
        WHOLLY GROUNDLESS. ............................................................................... 3

        A.    Even Where Gateway Questions Regarding Arbitrability Have
               Been Delegated to the Arbitrator, Courts Cannot Compel
               Arbitration of Claims Where the Assertion of Arbitration Is
               Wholly Groundless. ..................................................................... 3

        B.    Defendants' Assertion of Arbitrability of the Joint and Several
               Claims Is Wholly Groundless. ..................................................... 5

        C.    Defendants' Reliance on a Single Outlier Case Does Not Change
               the Result Here: Arbitration of the Joint and Several Claims Is
               Wholly Groundless. ................................................................... 11

    II.    THE COURT SHOULD NOT DISMISS ANY OF MICROSOFT MOBILE'S
        CLAIMS AGAINST PANASONIC AND SANYO. ....................................... 14

        A.    The Court Should Not Stay the Joint and Several Claims, But
               Instead Allow Them to Proceed. ............................................... 14

        B.    The Court Should Stay, Not Dismiss, the Direct Purchase Claims. ......... 16

    III.    CONCLUSION.................................................................................................. 17

MICROSOFT MOBILE'S OPP. TO PANASONIC      i      MASTER FILE NO. 4:13-MD-02420-YGR
AND SANYO DEFENDANTS' MOTION TO                                     CASE NO. 4:15-CV-03443-YGR
DISMISS AND COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Pitney Bowes, Inc.*,
   No. C 04-4808-SBA, 2005 WL 1048700 (N.D. Cal. May 4, 2005)......................................13

*ASUS Comput. Int'l v. InterDigital*,
   No. 15-cv-01716-BLF, 2015 WL 5186462 (N.D. Cal. September 4, 2015) ......................4, 9

*Bazemore v. Jefferson Capital Sys., LLC*,
   No. 314-115, 2015 WL 2220057 (S.D. Ga. May 11, 2015)...............................................5, 9

*Bergemann, Inc. v. Sullivan, Higgins & Brion, PPE*,
   No. 08-162-KI, 2008 WL 2116908 (D. Ore. May, 14, 2008)..................................................4

*Bernal v. Sw. & Pac. Specialty Finance, Inc.*,
   No. C 12-05797-SBA, 2014 WL 1868787 (N.D. Cal. May 7, 2014)................................4, 15

*Bitstamp Ltd. V. Ripple Labs Inc.*,
   No. 15-cv-01503-WHO, 2015 WL 4692418 (N.D. Cal. Aug. 6, 2015) ..................................4

*Clarium Capital Mgmt. LLC v. Chouhury*,
   No. C 08-5157SBA, 2009 WL 331588 (N.D. Cal. Feb. 11, 2009) .........................................4

*In re CRT*,
   Master Case No. 3:07-cv-05944-SC, Dkt. No. 1543 (N.D. Cal. Jan. 28, 2013) ...............6, 13

*In re CRT*,
   Master Case No. 3:07-cv-05944-SC, Dkt. No. 2265 (N.D. Cal. Dec. 13, 2013) ..............6, 13

*In re CRT*,
   Master Case No. 3:07-cv-05944-SC, Dkt. No. 3215 (N.D. Cal. Dec. 18, 2014) ............*passim*

*In re CRT*,
   Master Case No. 3:07-cv-05944-SC, Dkt. No. 3401 (N.D. Cal. Jan. 16, 2015) ...................13

*In re CRT*,
   Master Case No. 3:07-cv-05944-SC, Dkt. No. 3870 (N.D. Cal. June 11, 2015) ..................13

*Douglas v. Regions Bank*,
   757 F.3d 460 (5th Cir. 2014)......................................................................................4, 5, 14

*Ellsworth v. U.S. Bank, N.A.*,
   No. C 12–02506 LB, 2012 WL 4120003 (N.D. Cal. Sept. 19, 2012) .................................4, 9

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)..............................................................................................................3, 4

*Guidewire Software v. Chookaszian*,
　　No. C12-05797-SBA, 2012 WL 5379589 (N.D. Cal. Oct. 31, 2012) ............................... 4, 17

*Johnmohammadi v. Bloomingdale's, Inc.*,
　　755 F.3d 1072 (9th Cir. 2014) ......................................................................................... 16

*Leyva v. Certified Grocers of Cal., Ltd.*,
　　593 F.2d 857 (9th Cir. 1979)............................................................................................ 15

*Madrigal v. New Cingular Wireless Servs., Inc.*,
　　No. 09-cv-00033-OWW-SMS, 2009 WL 2513478 (E.D. Cal. Aug. 17, 2009)....................... 4

*Marriott Ownership Resorts, Inc. v. Flynn*,
　　No. 14-00372 JMS, 2014 WL 7076827 (D. Haw. Dec. 11, 2014)..................................... 4, 9

*Matson Terminals, Inc. v. Ins. Co. of N. Am.*,
　　No. C 13-05571 LB, 2014 WL 1219007 (N.D. Cal. March. 21, 2014).................................. 4

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
　　460 U.S. 1 (1983) ............................................................................................................. 3

*Muigai v. IMC Constr., Inc.*,
　　No. PJM 10-1119, 2011 WL 1743287 (D. Md. May 6, 2011)............................................. 5

*Nitsch v. DreamWorks Animation SKG Inc.*,
　　No. 14–CV–04062–LHK, 2015 WL 1886882 (N.D. Cal. April 24, 2015) ................... *passim*

*Poponin v. Virtual Pro, Inc.*,
　　No. C 06-4019-PJH, 2006 WL 2691418 (N.D. Cal. Sept. 20, 2006) ................................... 12

*Qualcomm Inc. v. Nokia Corp.*,
　　466 F.3d 1366 (Fed. Cir. 2006) ................................................................................. *passim*

*SanDisk Corp. v. SK Hynix Inc.*,
　　84 F. Supp. 3d 1021 (N.D. Cal. 2015) ................................................................................ 4

*Simula, Inc. v. Autoliv, Inc.*,
　　175 F.3d 716 (9th Cir. 1999)............................................................................................. 13

*Sparling v. Hoffman Constr. Co.*,
　　864 F.2d 635 (9th Cir.1988) ............................................................................................. 16

*In re TFT-LCD*,
　　Master Case No. 3:07-md-01827-SI, 2011 WL 2650689 (N.D. Cal. July 6,
　　2011) ............................................................................................................................... 7, 8

*In re TFT-LCD*,
　　Master Case No. 3:07-md-01827-SI, 2011 WL 3353867 (N.D. Cal. Aug. 3,
　　2011) ................................................................................................................................. 16

*In re TFT-LCD*,
  Master Case No. 3:07-md-01827-SI, 2011 WL 4017961 (N.D. Cal. Sept. 9,
  2011) ...........................................................................................................................11, 16

*In re TFT-LCD*,
  Master Case No. 3:07-md-01827-SI, Dkt. No. 4347 (N.D. Cal. Dec. 15, 2011) .................... 7

*In re TFT-LCD*,
  Master Case No. 3:07-md-01827-SI, Dkt. No. 6622 (N.D. Cal. Sept. 5, 2012) ..................... 8

*In re TFT-LCD*,
  Master Case No. 3:07-md-01827-SI, 2014 WL 1395733, Dkt. No. 4526 (N.D.
  Cal. Jan. 10, 2012) .......................................................................................................... 7

*In re TFT-LCD*,
  Master Case No. 3:07-md-01827-SI, 2014 WL 1395733 (N.D. Cal. April 10,
  2014) ........................................................................................................................... 6, 7

*Tompkins v. 23andMe, Inc.*,
  No. 5:13-cv-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ............................. 4

*Turi v. Main St. Adoption Servs., LLP*,
  633 F.3d 496 (6th Cir. 2011) ............................................................................................. 5

*United Steelworkers v. Warrior & Gulf Nav. Co.*,
  363 U.S. 574 (1960) .......................................................................................................... 3

*Visa USA, Inc. v. Maritz Inc.*,
  No. C 07-05585-JSW, 2008 WL 744832 (N.D. Cal. March 18, 2008) ............................... 13

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989) ..................................................................................................... 4, 14

*Wilcox v. Ho-Wing Sit*,
  586 F. Supp. 561 (N.D. Cal. 1984) ................................................................................... 15

*Wilson P. Abraham Const. Corp. v. Texas Indus., Inc.*,
  604 F.2d 897 (5th Cir. 1979), *aff'd sub nom. Texas Indus., Inc. v. Radcliff
  Materials, Inc.*, 451 U.S. 630 (1981) ............................................................................... 10

*Zenelaj v. Handybook, Inc.*,
  82 F. Supp. 3d 968, 971, 975-76 (N.D. Cal. 2015) ............................................................. 4

**Statutes**

9 U.S.C. § 3 .................................................................................................................14, 17

9 U.S.C. § 4 ....................................................................................................................... 4

9 U.S.C. § 208 .................................................................................................................. 15

## INTRODUCTION AND STATEMENT OF ISSUES

Defendants Panasonic and Sanyo focus their briefing primarily on issues that are undisputed.  Microsoft Mobile Inc. and Microsoft Mobile Oy (collectively, "Microsoft Mobile") acknowledge that there are Product Purchase Agreements ("PPAs") between Nokia, on the one hand, and Defendants Panasonic and Sanyo, on the other, and that these PPAs contain valid arbitration provisions.[1]  Microsoft Mobile does not seek to avoid these arbitration provisions on the basis that it was a nonsignatory to the PPAs.  Nor does Microsoft Mobile dispute that, by incorporating the Rules of Arbitration of the International Chamber of Commerce into their arbitration agreements, the parties agreed to delegate fairly debatable questions of arbitrability to the arbitrator.  Microsoft Mobile further acknowledges that the arbitrability of its claims against Panasonic based on Nokia's purchases from Panasonic and its claims against Sanyo based on Nokia's purchases from Sanyo (*i.e.*, the "Direct Purchase Claims") should be decided by the arbitrator in the first instance.  Given Microsoft Mobile's position on these issues – positions that Microsoft Mobile made clear to Defendants during the course of numerous meet and confer sessions prior to the filing of this motion – there are only two narrow issues before this Court.

*First*, this Court must determine whether Defendants' demand for arbitration of claims based on their co-conspirator liability for Nokia's purchases from *other* defendants (*i.e.,* the "Joint and Several Claims") is "wholly groundless."  The parties agreed to delegate to the arbitrator questions regarding arbitrability of claims with some relation to the PPA, but this delegation was not without limits.  Rather, the Federal Circuit, applying Ninth Circuit law, has prescribed a very specific role for the trial court in evaluating the delegation of the question of arbitrability.  That role is to determine whether the parties clearly and unmistakably intended to delegate to an arbitrator the power to decide arbitrability and, if so, to engage in a limited inquiry to determine whether the assertion of arbitrability of the dispute at issue is "wholly groundless."

---

[1]     The validity of the arbitration agreements, however, does not answer the question of whether the claims at issue here fall within the scope of the arbitration agreement.

*Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006).  Panasonic's and Sanyo's liability for the Joint and Several Claims is based on Nokia's purchases from other defendants and is therefore completely divorced from their PPAs with Nokia.  The Joint and Several Claims would exist even if Nokia had never purchased *anything* from Panasonic or Sanyo.  Accordingly, and as explained in greater detail below, any assertion that the Joint and Several Claims are subject to arbitration is wholly groundless, and the Court should deny Defendants' request to compel arbitration of the Joint and Several Claims.

*Second*, this Court must determine the disposition of Microsoft Mobile's claims against Panasonic and Sanyo in light of their demand for arbitration.  On this issue, the Court should deny Defendants' request that all claims against them be dismissed in their entirety.  None of the claims – Direct Purchase or Joint and Several – should be dismissed.  Instead, in order to prevent prejudice to Microsoft Mobile and to avoid inefficiencies, the Court should stay the Direct Purchase Claims and should permit the Joint and Several Claims to proceed.

## STATEMENT OF RELEVANT FACTS

In this litigation, Microsoft Mobile, which acquired Nokia Corporation's mobile device business in 2013, has brought claims on behalf of its predecessors, Nokia Inc. and Nokia Corporation ("Nokia"), for Defendants' willful violation of the antitrust laws.  *See* Complaint at ¶¶ 14-18, 75.  From at least January 1, 2000 through at least May 31, 2011, Defendants—LG Chem, Panasonic, Samsung SDI, Sanyo, and Sony—and additional co-conspirators engaged in an illegal conspiracy to fix, raise, stabilize, and maintain prices for lithium ion battery cells and lithium ion batteries.  *Id.* at ¶¶ 3, 75-174.  Sanyo and LG Chem have already pled guilty to engaging in a conspiracy to fix the price of lithium ion battery cells.  *Id.* at ¶¶ 180-181.  Nokia purchased lithium ion cells and batteries directly from each of the Defendants and, as a result of Defendants' illegal price-fixing, Nokia paid more for these products than it otherwise would have paid.  *Id.* at ¶¶ 4, 16, 18.

Nokia's lithium ion cell and lithium ion battery purchases from Panasonic were governed by a PPA entered into on March 6, 2000.  *See* Amato Decl., Ex. A (the "Nokia-Panasonic PPA").

1   Nokia's lithium ion cell and lithium ion battery purchases from Sanyo were governed by a PPA

2   entered into on January 10, 2000.  *See* Amato Decl., Ex. E (the "Nokia-Sanyo PPA").  Both

3   PPAs include an arbitration provision that provides: "Any disputes arising between the Parties

4   out of or in connection with this Agreement or the interpretation, breach or enforcement of this

5   Agreement shall be resolved and settled by arbitration in accordance with the Rules of

6   Arbitration of the International Chamber of Commerce."  Nokia-Panasonic PPA § 31.2; Nokia-

7   Sanyo PPA § 31.2.

8                                    **ARGUMENT**

9   I.     **THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL ARBITRATION
           OF THE JOINT AND SEVERAL CLAIMS BECAUSE DEFENDANTS' DEMAND FOR
10          ARBITRATION OF THOSE CLAIMS IS WHOLLY GROUNDLESS.**

11          Delegation of the arbitrability issue does not mean that *any* and *all* claims that could ever

12  exist between the parties should be sent to arbitration.  Claims that are wholly unrelated to the

13  PPAs cannot be sent to arbitration even if only to determine their arbitrability.  The Joint and

14  Several Claims fall into this camp, and the Court should not compel arbitration as to these

15  claims.

16          A.     **Even Where Gateway Questions Regarding Arbitrability Have Been
                   Delegated to the Arbitrator, Courts Cannot Compel Arbitration of
17                 Claims Where the Assertion of Arbitration Is Wholly Groundless.**

18          "[A]rbitration is a matter of contract and a party cannot be required to submit to

19  arbitration any dispute which he has not agreed so to submit."  *United Steelworkers v. Warrior &*

20  *Gulf Nav. Co.*, 363 U.S. 574, 582 (1960); *see also First Options of Chicago, Inc. v. Kaplan*, 514

21  U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a

22  way to resolve those disputes-*but only* those disputes-that the parties have agreed to submit to

23  arbitration" (emphasis added)).[2]  While parties are free to agree to submit gateway arbitrability

24  issues to arbitration, "the question 'who has the primary power to decide arbitrability' turns upon

25  _____

26  [2]     This is true even when it results in piecemeal litigation. *Moses H. Cone Mem'l Hosp. v.*
        *Mercury Const. Corp.*, 460 U.S. 1, 20 (1983) ("[T]he relevant federal law *requires* piecemeal
27      resolution when necessary to give effect to an arbitration agreement.").

28

1    what the parties agreed about *that* matter." *First Options*, 514 U.S. at 943; *see also Volt Info.*

2    *Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474-75 (1989) ("[T]he

3    FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the

4    right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the*

5    *parties'] agreement.*'" (quoting 9 U.S.C. § 4)).

6    From these principles, it follows that "[t]he mere existence of a delegation provision . . .

7    cannot possibly bind [a party] to arbitrate gateway questions of arbitrability in *all* future disputes

8    with the other party, no matter their origin." *Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th

9    Cir. 2014).   Instead, where the parties "clearly and unmistakably intend[ed] to delegate the

10   power to decide arbitrability to an arbitrator," the court should perform a "limited inquiry to

11   determine whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm*, 466 F.3d at

12   1371 (applying Ninth Circuit law).   This inquiry "prevent[s] a party from asserting any claim at

13   all, no matter how divorced from the parties' agreement, to force an arbitration." *Id.* at 1373 n.5.

14   *Qualcomm*'s "wholly groundless" standard has been applied in numerous decisions from

15   the Northern District of California[3] and by other district courts within the Ninth Circuit.[4]   The

16

17   [3]    *See ASUS Computer Int'l v. InterDigital*, No. 15-cv-01716-BLF, 2015 WL 5186462, at
       *3, 5-6 (N.D. Cal. Sept. 4, 2015) (J. Freeman); *Bitstamp Ltd. v. Ripple Labs Inc.*, No. 15-cv-
18   01503-WHO, 2015 WL 4692418, at *4-5 (N.D. Cal. Aug. 6, 2015) (J. Orrick); *Nitsch v.
       DreamWorks Animation SKG Inc.*, No. 14–CV–04062–LHK, 2015 WL 1886882, at *8-10 (N.D.
19   Cal. Apr. 24, 2015) (J. Koh); *Zenelaj v. Handybook, Inc.*, 82 F. Supp. 3d 968, 971, 975-76 (N.D.
       Cal. 2015) (J. Henderson); *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. C 12-05797-SBA, 2014
20   WL 1868787, at *3-5 (N.D. Cal. May 7, 2014) (J. Armstrong); *Guidewire Software v.
       Chookaszian*, No. C12-05797-SBA, 2012 WL 5379589, at *4-6 (N.D. Cal. Oct. 31, 2012) (J.
21   Koh); *Ellsworth v. U.S. Bank, N.A.*, No. C 12–02506 LB, 2012 WL 4120003, at *6-7 (N.D. Cal.
       Sept. 19, 2012) (J. Beeler); *Clarium Capital Mgmt. LLC v. Chouhury*, No. C 08-5157SBA, 2009
22   WL 331588, at *4-6 (N.D. Cal. Feb. 11, 2009) (J. Armstrong).  Additionally, the following cases
       from the Northern District of California have adopted *Qualcomm*, but did not reach the wholly
23   groundless inquiry:  *SanDisk Corp. v. SK Hynix Inc.*, 84 F. Supp. 3d 1021, 1027 (N.D. Cal.
       2015) (J. Koh); *Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682-LHK, 2014 WL 2903752, at *4
24   (N.D. Cal. June 25, 2014) (J. Koh); *Matson Terminals, Inc. v. Ins. Co. of N. Am.*, No. C 13-
       05571 LB, 2014 WL 1219007, at *4 (N.D. Cal. Mar. 21, 2014) (J. Beeler).

25   [4]    *Marriott Ownership Resorts, Inc. v. Flynn*, No. 14-00372 JMS, 2014 WL 7076827, at
       *15 (D. Haw. Dec. 11, 2014); *Madrigal v. New Cingular Wireless Servs., Inc.*, No. 09-cv-00033-
26   OWW-SMS, 2009 WL 2513478, at *6 n.6 (E.D. Cal. Aug. 17, 2009); *Bergemann, Inc. v.
       Sullivan, Higgins & Brion, PPE*, No. 08-162-KI, 2008 WL 2116908, at *3 (D. Ore. May 14,
27   2008).

28

MICROSOFT MOBILE'S OPP. TO PANASONIC          4          MASTER FILE NO. 4:13-MD-02420-YGR
AND SANYO DEFENDANTS' MOTION TO                        CASE NO. 4:15-CV-03443-YGR
DISMISS AND COMPEL ARBITRATION

*Qualcomm* standard is also the prevailing rule outside of the Ninth Circuit.  The Fifth Circuit has explicitly adopted the "wholly groundless" standard articulated in *Qualcomm*, explaining:

> If it were otherwise, then every case involving an arbitration agreement with a delegation provision must, with no exceptions, be submitted for such gateway arbitration; no matter how untenable the argument that there is some connection between the dispute and the agreement, an arbitrator must decide first. . . . The law of this circuit does not require all claims to be sent to gateway arbitration merely because there is a delegation provision.

*Douglas*, 757 F.3d at 463.  The Sixth Circuit has adopted a standard that is comparable to the wholly groundless inquiry, asking whether the dispute at issue is "at least *arguably* covered by the [arbitration] agreement." *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 511 (6th Cir. 2011).  And a number of district courts from other circuits have also applied the wholly groundless standard.[5]  In short, the federal law of arbitrability is clear: even if the parties delegated to the arbitrator the power to decide arbitrability, courts should only compel arbitration where the assertion of arbitrability is not wholly groundless.

### B.   Defendants' Assertion of Arbitrability of the Joint and Several Claims Is Wholly Groundless.

Applying the standard set forth in *Qualcomm*, Defendants' demand for arbitration of the Joint and Several Claims is "wholly groundless."  Nearly every case to consider whether antitrust claims premised on joint and several liability fall within the scope of an arbitration agreement—including many recent decisions from the Northern District of California in cases very similar to this one—has held that they are NOT subject to arbitration, even where the arbitration provision at issue is a broad one.

In the *In re Cathode Ray Tube (CRT) Antitrust Litigation MDL* ("*In re CRT*"), Judge Conti addressed the issue of the arbitrability of joint and several claims twice.[6]  Judge Conti first

---

[5]   *See, e.g., Bazemore v. Jefferson Capital Sys., LLC*, No. 314-115, 2015 WL 2220057, at *6-7 (S.D. Ga. May 11, 2015); *Muigai v. IMC Constr., Inc.*, No. PJM 10-1119, 2011 WL 1743287, at *4-5 (D. Md. May 6, 2011).

[6]   As discussed *infra*, in a subsequent CRT decision, Judge Conti determined that he did not have jurisdiction to determine whether any of the claims were arbitrable and therefore did not

(continued...)

dealt with this issue in response to a motion to compel arbitration filed by defendant Toshiba against plaintiff Costco. Toshiba sought to compel arbitration of all of Costco's claims against it pursuant to the arbitration provision contained in the parties' vendor agreement. Judge Conti granted the motion in part, but denied the motion as to "Plaintiff's claims for co-conspirator or joint and several liability based on Plaintiff Costco's purchase of products from defendants other than the Toshiba Defendants." *In re CRT*, Master Case No. 3:07-cv-05944-SC, Dkt. No. 1543 (Order Adopting Special Master's Report and Recommendation Regarding Toshiba Defendants' Motion to Compel Arbitration), at 10 (N.D. Cal. Jan. 28, 2013) (Miller Decl. Ex. 2). Judge Conti addressed this issue again when ruling on a motion to compel arbitration filed by the Philips defendants against plaintiff Costco. The Philips defendants also sought to compel arbitration of all of Costco's claims against Philips, but the court again granted the motion to compel arbitration "with the exception of Plaintiff's claims for co-conspirator or joint and several liability based on Plaintiff Costco's purchase of products from defendants other than the Philips Defendants." *In re CRT*, Master Case No. 3:07-cv-05944-SC, Dkt. No. 2265 (Order Granting in Part and Denying in Part the Philips Defendants' Motion to Compel Arbitration), at 12 (N.D. Cal. Dec. 13, 2013) (Miller Decl. Ex. 3). Instead, the court found that "[t]hose [joint and several] claims are outside the scope of the present arbitration agreement." *Id.* at 11.

This issue was also addressed by Judge Illston in the *In re TFT-LCD (Flat Panel) Antitrust Litigation MDL* ("*In re TFT-LCD*"). For example, Judge Illston granted in part and denied in part defendant NEC's motion to compel arbitration with plaintiff Gateway, explaining that: "Gateway's claims . . . are arbitrable only to the extent they are based on purchases it made directly from NEC; to the extent Gateway's claims *are based on indirect purchases or co-conspirator liability*, such claims are not subject to arbitration." *In re TFT-LCD*, Master Case

---

(continued)

address this question. *See In re CRT*, Master Case No. c-07-5944-SC, Dkt. No. 3215 (Order Granting Motion to Compel Arbitration) (N.D. Cal. Dec. 18, 2014) (Declaration of B. Parker Miller ("Miller Decl.") Ex. 1).

No. 3:07-md-1827-SI, 2014 WL 1395733, at *3 (N.D. Cal. Apr. 10, 2014) (emphasis added).[7] Judge Illston also found that joint and several claims are not subject to mandatory arbitration provisions even in the presence of "an exceptionally broad arbitration clause," between plaintiff Jaco and defendant NEC.  *In re TFT-LCD*, Master Case No. 3:07-md-01827-SI, Dkt. No. 4526 (Order Granting in Part NEC Defendants' Motion to Compel Arbitration), at 2 (N.D. Cal. Jan. 10, 2012) (Miller Decl. Ex. 5).  Specifically, Judge Illston held:

> [T]he arbitration clause is necessarily limited to disputes arising out of the business relationship between Jaco and NEC. Thus, Jaco's claims are arbitrable to the extent that they are based upon purchases it made directly from NEC; to the extent Jaco's claims against NEC are based on coconspirator liability for purchases Jaco made from other defendants, such claims are not subject to arbitration.

*Id.*[8]

Finally, and perhaps most instructively, Judge Illston reviewed the very same issue in the context of an arbitration provision very similar to the ones at issue in this case.  *In re TFT-LCD*, Master Case No. 3:07-md-01827-SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011).  In that case, defendant AU Optronics ("AUO") moved to compel arbitration of all of plaintiff Nokia's claims. The court found that the language contained in Nokia's PPA with AUO, which required arbitration of "any disputes related to this Agreement," must be read broadly.  *Id.* at *4-5.  The

---

[7]    *See also In re TFT-LCD*, Master Case No. 3:07-md-01827-SI, Dkt. No. 4347 (Order Denying Epson Defendants' Motion to Compel Arbitration and Granting Costco Leave to Amend Complaint), at 2 (N.D. Cal. Dec. 15, 2011) (Miller Decl. Ex. 4) (noting that claims against Defendant Epson were based on two sources—direct purchases and joint and several liability—and that "the former are subject to arbitration and the latter are not").

[8]    The provision at issue provided for arbitration of "any disagreement or controversy of any kind [that] arises between the DISTRIBUTOR and SUPPLIER . . . whether claimed in tort, contract or otherwise."  *In re TFT-LCD*, Dkt. 4526 at 2.  Yet Judge Illston rejected mandatory arbitration of joint and several claims.  It is telling that Panasonic and Sanyo's motion to compel attempts to expand the actual agreement between the parties, which says "Any disputes arising between the Parties out of or in connection with *this Agreement*…," to an agreement to arbitrate the "commercial relationships" between the parties. *Compare* Nokia-Panasonic PPA § 31.2 *and* Nokia-Sanyo PPA § 31.2 (emphasis added), *with* Panasonic & Sanyo Br. at 1.  Even if that hypothetical agreement had been adopted, claims for joint and several liability would still be outside of the business or commercial relationship between these parties—those claims arise solely from Panasonic's and Sanyo's price fixing conspiracy with others, not the supplier relationship they had with Nokia.

court therefore granted in part AUO's motion to compel arbitration, but denied the motion as to Nokia's joint and several claims against AUO: "the PPA and its arbitration agreement govern Nokia's present claims against AUO insofar as those claims relate to Nokia's purchases from AUO. . . . [Nokia] may proceed [in litigation] with its claims that are based upon purchases from defendants other than AUO." *Id.* at *6. Following the July 6, 2011 order, AUO moved for clarification on the exact point raised here: whether Nokia's joint and several claims were subject to Judge Illston's previous order granting the motion to compel arbitration. Clarifying her prior order, and reviewing a very similar arbitration clause,[9] Judge Illston rejected arguments that joint and several claims were within the scope of the arbitration provision and held that Nokia "may proceed with its claims against AUO for joint and several liability." *In re TFT-LCD*, Master Case No. 3:07-md-01827-SI, Dkt. No. 6622 (Order re: AU Optronic's Request for Clarification), at 1-2 (N.D. Cal. Sept. 5, 2012) (Miller Decl. Ex. 6).

A recent order from Judge Koh applying *Qualcomm*'s wholly groundless standard likewise demonstrates that Defendants' assertion of arbitrability of the Joint and Several Claims is just that: wholly groundless. *See Nitsch v. DreamWorks*, 2015 WL 1886882. There, the plaintiff brought a Section 1 claim against numerous animation and video effect studios alleging that they had conspired to fix and suppress employee compensation. *Id.* at *1, 3, 6. The plaintiff sought damages based on compensation received during his employment with two of the defendant studios (DreamWorks and Sony Pictures), but only the employment agreement with DreamWorks contained an arbitration provision. *See id.* at *9-10. Applying *Qualcomm*, the court first concluded that the plaintiff and DreamWorks had delegated the question of arbitrability to the arbitrator. *Id.* at *9. The court then went on to address whether DreamWorks' assertion of arbitrability was wholly groundless. With respect to claims against DreamWorks

---

[9]     The PPAs at issue here provide for arbitration of "[a]ny disputes arising between the Parties out of or in connection with this Agreement or the interpretation, breach or enforcement of this Agreement." Nokia-Panasonic PPA § 31.2; Nokia-Sanyo PPA § 31.2.  The Nokia-AUO PPA provided for arbitration of "[a]ny disputes related to this Agreement or its enforcement." *In re TFT-LCD*, 2011 WL 2650689, at *3.

1    arising out of plaintiff's employment with DreamWorks (*i.e.*, direct claims), the court found that

2    the assertion of arbitrability was not wholly groundless and that the arbitrator should address

3    arbitrability. *Id.* at *10. With respect to claims against DreamWorks arising out of plaintiff's

4    employment with Sony Pictures and for which DreamWorks was liable due to its conspiratorial

5    conduct (*i.e.*, the joint and several claims), the court held that any argument that the arbitration

6    agreement with DreamWorks encompassed such claims was wholly groundless and denied the

7    motion to compel arbitration in that regard. *Id.*

8        Other courts conducting the wholly groundless inquiry similarly conclude that, even

9    when there is a delegation provision, there must be some connection between the dispute at issue

10   and the agreement containing the arbitration provision before a court should compel arbitration.

11   *See ASUS Computer.*, 2015 WL 5186462, at *6 (compelling arbitration as to claims arising under

12   the agreement at issue, but finding that for claims "involv[ing] a separate business transaction []

13   Defendants' assertion of arbitrability is wholly groundless."); *Bazemore*, 2015 WL 2220057, at

14   *7 (holding that assertion of arbitration of FDCPA claims pursuant to arbitration provision

15   contained in cardholder agreement was wholly groundless where dispute centered on the conduct

16   of a debt collector, not payment, nonpayment, or calculation of a debt incurred under the

17   cardholder agreement) ("[T]he Court is obligated to inquire whether Bazemore intended to bind

18   herself forever to arbitration of any and all claims that might ever exist between her and First

19   Bank of Delaware. It is unrealistic and implausible to conclude that she has."); *Ellsworth*, 2012

20   WL 4120003, at *7 (denying motion to compel arbitration and noting arbitration demand was

21   wholly groundless where dispute related to mortgage loan between the parties but mortgage

22   agreement did not contain an arbitration provision and arbitration provision instead appeared in a

23   separate agreement between the parties); *Marriott Ownership Resorts,* 2014 WL 7076827, at *15

24   (in dispute regarding time share agreements, ordering arbitration as to properties for which the

25   corresponding agreement contained an arbitration provision but finding arbitration "wholly

26   groundless" for disputes related to properties for which the corresponding time share agreement

27   did not contain an arbitration provision).

28

MICROSOFT MOBILE'S OPP. TO PANASONIC          9          MASTER FILE NO. 4:13-MD-02420-YGR
AND SANYO DEFENDANTS' MOTION TO                          CASE NO. 4:15-CV-03443-YGR
DISMISS AND COMPEL ARBITRATION

1  Applying the wholly groundless standard, it is clear that Defendants' motion should be

2  denied as to the Joint and Several Claims. Each PPA governs the purchase and sale of certain

3  products between a single supplier, in this case, Sanyo or Panasonic, and Nokia.   The

4  "Agreement" is about that and only about that—the sale of certain products by that supplier to

5  Nokia.  The PPAs provide for the arbitration of "[a]ny disputes arising between the Parties out of

6  or in connection with this Agreement or the interpretation, breach or enforcement of this

7  Agreement."  Nokia-Panasonic PPA § 31.2; Nokia-Sanyo PPA § 31.2.  Given this language, it is

8  at least plausible that the Direct Purchase Claims are subject to arbitration.  Therefore, in light of

9  the parties' delegation of arbitrability, that is a decision that should be made by the arbitrator.

10  Microsoft Mobile's Joint and Several Claims, however, are unrelated to the PPAs and therefore

11  not arbitrable.

12  The Joint and Several Claims exist separately and independently of the Direct Purchase

13  Claims.  The Joint and Several Claims against Panasonic, for instance, are not based on Nokia's

14  purchases from Panasonic, but on Nokia's purchases from all other defendants and co-

15  conspirators—entities who are not parties to the Panasonic PPA.  The same holds true for Sanyo.

16  The Joint and Several Claims against Sanyo arise *only* from purchases from other suppliers who

17  are not Sanyo.  Claims arising out of the purchases from non-Panasonic and non-Sanyo suppliers

18  are not subject to the Panasonic PPA or Sanyo PPA precisely *because* they are not purchases

19  from Panasonic or Sanyo and are instead purchases from someone else.

20  These Joint and Several Claims would still exist even if there were no PPA with

21  Panasonic or Sanyo and even if there were no direct purchases from them.  Because "[a]ntitrust

22  coconspirators are jointly and severally liable for all damages caused by the conspiracy to which

23  they were a party," even if Nokia had not purchased *any* batteries from Panasonic (or Sanyo), the

24  Joint and Several Claims against Panasonic (or Sanyo) would still exist.  *See, e.g., Wilson P.*

25  *Abraham Const. Corp. v. Texas Indus., Inc.*, 604 F.2d 897, 904 n.15 (5th Cir. 1979), *aff'd sub*

26  *nom. Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981).  Microsoft Mobile could

27  bring the exact claim it seeks to maintain in the absence of any PPA.  Given that the PPA with

28

1    Panasonic (or Sanyo) has no connection to Nokia's purchases from other third parties, it defies

2    reason to suggest that Nokia and Panasonic (or Sanyo) contemplated that the arbitration

3    provision contained in their PPA would apply to disputes regarding artificially inflated prices

4    that Nokia paid to other companies.  Nor can it plausibly be argued that disputes regarding what

5    those third parties charged Nokia under entirely separate agreements arise "out of or in

6    connection with" Nokia's separate PPA with Panasonic (or Sanyo).[10]  As Judge Illston explained

7    in *In re TFT-LCD*:

8    > Forcing [a plaintiff] to arbitrate because defendants entered into a complex,
     > interdependent conspiracy would not only exceed the scope of [the parties]'s
9    > arbitration clause, it would also impede the enforceability of the antitrust laws.
     > To rule otherwise would allow defendants to bootstrap their way into arbitration
10   > based on nothing more than the very conduct which constituted a violation of the
     > antitrust laws in the first place.
11

12   *In re TFT-LCD*, Master Case No. 3:07-md-01827-SI, 2011 WL 4017961, at *5 (N.D. Cal. Sept.

13   9, 2011) (denying motion to compel arbitration as to defendants with whom plaintiff had not

14   entered into an arbitration agreement).  In other words, any suggestion that the Joint and Several

15   Claims are arbitrable is wholly groundless.  *See Nitsch*, 2015 WL 1886882, at *10.

16              **C.    Defendants' Reliance on a Single Outlier Case Does Not Change the**
                        **Result Here: Arbitration of the Joint and Several Claims Is Wholly**
17                      **Groundless.**

18           The only case that Defendants cite to support their assertion that Joint and Several Claims

19   should be sent to arbitration is an unreported decision from the *CRT* MDL, in which the court

20   granted defendant Panasonic's motion to compel arbitration with plaintiff Viewsonic.  *In re CRT*,

21   Master Case No. c-07-5944-SC, Dkt. No. 3215 (Order Granting Motion to Compel Arbitration)

22   (N.D. Cal. Dec. 18, 2014) (Miller Decl. Ex. 1).  This decision should not alter this Court's

23   analysis.

24   _____

25   [10]      The issue is highlighted by a hypothetical scenario where Nokia and a Nokia supplier
     (other than Sanyo and Panasonic) have a warranty dispute.  In such a dispute, neither the supplier
26   nor Nokia would ever consider looking at the Sanyo or Panasonic Agreements for guidance on
     the warranty provisions.  These PPAs simply have nothing to do with the purchase of batteries
27   from other suppliers.

28

*First*, the CRT court did not consider, much less apply, the wholly groundless standard. In their papers, neither party argued for, or even mentioned, the standard set forth in *Qualcomm*. *See In re CRT*, Master Case No. c-07-5944-SC, Dkt. Nos. 2767, 2867, 2899 (Miller Decl. Exs. 7-9). The court also made no mention of the wholly groundless inquiry, and simply assumed that its job was complete once it found that arbitrability questions had been delegated to the arbitrator. *See In re CRT*, Dkt. No. 3215 at 10. Yet, as discussed above, the great weight of federal authority requires a court to undertake a limited inquiry to satisfy itself that arbitrability is plausible.

*Second*, because the court in this outlier decision referred to a footnote in Panasonic's papers in its ruling, it is worth noting that the cases cited by Panasonic in its *CRT* briefing do not support Panasonic's argument there that the court lost subject matter jurisdiction. Specifically, in *CRT*, Panasonic argued that because the parties delegated arbitrability questions to the arbitrator, the court was divested of subject matter jurisdiction to determine arbitrability and was required to submit all claims (including claims based on joint and several liability) to arbitration. *See In re CRT*, Dkt. No. 2899, at 4-6. The only case cited by Panasonic in *CRT* that even discusses whether a delegation clause divests a court of jurisdiction is *Poponin v. Virtual Pro, Inc.*, No. C 06-4019-PJH, 2006 WL 2691418 (N.D. Cal. Sept. 20, 2006). *Poponin*, however, is not in conflict with *Qualcomm* and does not stand for the proposition that a delegation clause divests the court of all jurisdiction. First, the court actively considered and eventually rejected plaintiff's contractual and unconscionability arguments. *Id.* at *9-11. This is hardly the result for which Panasonic advocates, where the waiving of an arbitration clause immediately renders the district court powerless. Second, although the *Poponin* court granted defendant's motion to dismiss for lack of jurisdiction, in so holding, the court specifically noted that the arbitrator had already determined that it had jurisdiction to decide the dispute at issue.[11] *Id.* at *12. In other words, it

---

[11] The defendant in *Poponin* initiated an arbitration before the ICC and the arbitral tribunal affirmatively considered and determined that it had jurisdiction over the dispute. *Id.* at *2-3. It was only after the tribunal made this determination that the plaintiff initiated litigation. *Id.* at *3-

(continued...)

was not a situation where the claims might return to court after the arbitrator considered arbitrability; the court was divested of jurisdiction because there could be nothing left for the court to rule upon.[12]

     **Third**, any precedential value of this CRT decision is questionable in light of the same court's prior rulings which actually addressed and applied the wholly groundless standard and a subsequent Report and Recommendation also adopted by the court. *See In re CRT*, Master Case No. c-07-5944-SC, Dkt. No. 3401 (Special Master's Report and Recommendation on Mitsubishi's Motion to Compel Discovery re: Viewsonic's Sales), at 3-4 (N.D. Cal. Jan. 16, 2015) (Miller Decl. Ex. 10); *In re CRT*, Master Case No. c-07-5944-SC, Dkt. 3870 (Order Adopting Reports and Recommendations), at 2 (N.D. Cal. June 11, 2015) (Miller Decl. Ex. 11). In the R&R, the Special Master noted that the court's December 18, 2014 order, which dismissed all of the plaintiff's claims against all defendants (even those that had not moved to compel arbitration), was at odds with the court's prior orders and the relevant law and clarified that plaintiff's claims against the defendants that did not move to compel arbitration remained in the litigation. *Id.* Also, as discussed above, although Judge Conti did not inquire into the arbitrability of joint and several claims at all as part of his December 19, 2014 order, he did undertake such an arbitrability analysis in ruling on other motions in the *CRT* litigation. *See In re CRT*, Dkt. No. 1543, at 10; *id.* Dkt. No. 2265. And in both of those instances, Judge Conti, like Judge Illston in *In re TFT-LCD*, held that joint and several claims were *not* arbitrable. *Id.*

---

(continued)

4.

[12]     None of the other cases cited by Panasonic in its *CRT* briefing even involved a dismissal for lack of jurisdiction. *See Visa USA, Inc. v. Maritz Inc.*, No. C 07-05585-JSW, 2008 WL 744832, at *6 (N.D. Cal. Mar. 18, 2008) (staying case pending arbitration and denying defendant's motion to dismiss "without prejudice to refiling should the arbitration panel determine that the parties' dispute are [sic] not properly subject to arbitration."); *Anderson v. Pitney Bowes, Inc.*, No. C 04-4808-SBA, 2005 WL 1048700, at *2, *4 (N.D. Cal. May 4, 2005) (staying (rather than dismissing) claims pending arbitration in a pre-*Qualcomm* case and acknowledging the need for a limited review of the agreement even in the face of a delegation clause); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721-26 (9th Cir. 1999) (affirming dismissal under Rule 12(b)(6) in pre-*Qualcomm* case that did not involve a delegation provision).

MICROSOFT MOBILE'S OPP. TO PANASONIC      13      MASTER FILE NO. 4:13-MD-02420-YGR
AND SANYO DEFENDANTS' MOTION TO                      CASE NO. 4:15-CV-03443-YGR
DISMISS AND COMPEL ARBITRATION

1   Microsoft respectfully submits that had the court engaged in the limited inquiry required under

2   *Qualcomm*, it would have reached the same conclusion again: any claim that joint and several

3   claims were within the scope of the arbitration agreement would be wholly groundless.

4         "Arbitration under the [Federal Arbitration] Act is a matter of consent, not coercion,"

5   *Volt*, 489 U.S. at 479, and Defendants here should not be permitted to bootstrap their

6   nonarbitrable claims to their potentially arbitrable ones and thereby subvert the intent of the

7   parties.  The Fifth Circuit in *Douglas* framed the issue well:

8         When [plaintiff] signed the arbitration agreement containing a delegation
          provision, did [it] intend to go through the rigmaroles of arbitration just so the
9         arbitrator can tell [it] in the first instance that [its] claim has nothing whatsoever
          to do with her arbitration agreement, and [plaintiff] should now feel free to file in
10        federal court? Obviously not.

11

12  757 F.3d at 464.  Likewise, it is implausible to suggest that the arbitration provisions of the PPAs

13  were intended to apply to claims arising from Nokia's purchases from third parties.   And

14  Defendants' reliance on a single outlier case does not change the fact that their claim for

15  arbitration of the Joint and Several Claims is wholly groundless.  The Court should therefore

16  deny their motion as to the Joint and Several Claims.

17      **II.**      **THE COURT SHOULD NOT DISMISS ANY OF MICROSOFT MOBILE'S CLAIMS
                  AGAINST PANASONIC AND SANYO.**

18           **A.**      **The Court Should Not Stay the Joint and Several Claims, But Instead
19                 Allow Them to Proceed.**

20        As detailed above, Defendants' assertion of arbitrability over the Joint and Several

21  Claims is wholly groundless.  Consequently, there is no basis for dismissing these claims.

22  Moreover, to stay these claims would be inefficient in light of the ongoing class action litigation.

23        Section 3 of the FAA instructs courts to stay proceedings on application of one of the

24  parties, but only "upon being satisfied that the issue . . . is referable to arbitration."  9 U.S.C.

25  § 3.[13]  Because Defendants' assertion that the Joint and Several Claims are arbitrable is wholly

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27  [13]     9 U.S.C. § 3 provides: "[T]he court . . . upon being satisfied that the issue involved in

28                                                       (continued...)

MICROSOFT MOBILE'S OPP. TO PANASONIC     14     MASTER FILE NO. 4:13-MD-02420-YGR
AND SANYO DEFENDANTS' MOTION TO               CASE NO. 4:15-CV-03443-YGR
DISMISS AND COMPEL ARBITRATION

1    groundless, Section 3 does not empower the Court to stay these claims.  *See Bernal*, 2014 WL

2    1868787, at *3 ("If the district court finds that the assertion of arbitrability is 'wholly

3    groundless,' then it may conclude that it is not 'satisfied' under section 3, and deny the moving

4    party's request for a stay." (quoting *Qualcomm*, 466 F.3d at 1371)).   Nonetheless, "[w]here

5    plaintiffs assert both arbitrable and nonarbitrable claims, district courts have discretion whether

6    to proceed with the nonarbitrable claims before or after the arbitration and [have] . . . authority

7    to stay proceedings in the interest of saving time and effort for itself and litigants." *Nitsch*, 2015

8    WL 1886882 at *15 (citations omitted) (staying arbitrable claims but denying stay as to

9    nonarbitrable claims).  Here, the Court should not issue a stay because practical considerations

10   weigh decidedly against it.

11          Typical reasons for imposing a stay—such as the predominance of arbitrable claims or

12   the ability to streamline subsequent proceedings—are not present here.  *See Leyva v. Certified*

13   *Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (discussing that courts have inherent

14   power to impose stays if continuing litigation "would waste judicial resources and be

15   burdensome upon the parties"); *Wilcox v. Ho-Wing Sit*, 586 F. Supp. 561, 567 (N.D. Cal. 1984)

16   (noting the court "has authority to stay proceedings in the interest of saving time and effort for

17   itself and litigants").   Instead of promoting judicial efficiency and an organized docket, a stay

18   would create duplicative discovery and prejudice all parties involved.   Regardless of whether the

19   Court issues a stay of the Joint and Several Claims in this case, Defendants will still proceed in

20   litigation related to the claims of the Direct Purchaser Class, the Indirect Purchaser Class, and the

21   other Direct Action Plaintiffs.[14]   Allowing the Joint and Several Claims to proceed would not

22

23   (continued)

24   such suit or proceeding is referable to arbitration under such an agreement, shall on application
     of one of the parties stay the trial of the action . . ." The mandatory stay provision found in

25   Section 3 applies to arbitrable claims that fall under the New York Convention and foreign
     parties. *See* 9 U.S.C. § 208 ("Chapter 1 applies to actions and proceedings brought under this

26   chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified
     by the United States.").

27   [14]      It should be noted that the Indirect Purchaser Class claims include claims based on harms

28                                                                                    (continued...)

prejudice Defendants' interests nor burden the Court.  *See In re TFT-LCD*, Master Case No. 3:07-md-01827-SI, 2011 WL 3353867, at *3 (N.D. Cal. Aug. 3, 2011) (denying stay where parties seeking to compel arbitration were "defendant[s] in many other proceedings in this MDL and must therefore conduct [their] defense regardless of whether this matter is stayed"); *In re TFT-LCD*, 2011 WL 4017961, at *7 ("Given the scope of these MDL proceedings, however, and defendants' extensive involvement in the class and direct-purchaser actions, the Court finds that a stay will have little benefit.").  Additionally, staying the Joint and Several Claims would lead to significant inefficiencies for the Court, the parties, and the witnesses, as Microsoft Mobile would be forced to call back witnesses (many of whom are located in Japan) to re-open depositions, and to litigate issues that would have been more efficiently handled in conjunction with the ongoing MDL proceedings.  This would put an undue burden on Microsoft Mobile, Defendants, and witnesses.  For these reasons, the Court should not impose a stay on the Joint and Several Claims, but instead allow them to proceed in the MDL.

### B.    The Court Should Stay, Not Dismiss, the Direct Purchase Claims.

While the Court should allow the Joint and Several Claims to proceed, it should stay the Direct Purchase Claims against Panasonic and Sanyo.   The Ninth Circuit has held that "notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir.1988)); *see also Nitsch*, 2015 WL 1886882 at *15.  Here, however, dismissal would be inappropriate.  First, as explained above, only some of the claims between the parties are potentially arbitrable.  Second, because the parties agree that they delegated the power to decide arbitrability to the arbitrator, the Court's

---

(continued)

as a result of the purchase of Nokia handsets by consumers.  Thus, discovery as to whether Nokia was a victim of the conspiracy and the harm suffered by Nokia will be a significant part of the Indirect Purchaser Class proceedings.

1    inquiry is a narrow one, asking only whether arbitrability is wholly groundless rather than
2    conducting a full arbitrability analysis. *See Qualcomm*, 466 F.3d at 1371. Given the limited
3    analysis performed by courts when the parties have delegated arbitrability questions, if a court
4    finds that arbitrability is not wholly groundless, it should "stay the trial of the action to permit an
5    arbitrator to rule on the arbitrability of those issues." *Id*. at 1375; *see also Chookaszian*, 2012
6    WL 5379589, at *6 ("Because the Court concludes that Defendant's claim that this matter is
7    arbitrable is not wholly groundless, the Court must stay these proceedings pursuant to 9 U.S.C. §
8    3." (citing *Qualcomm*, 466 F.3d at 1374)). A stay, rather than dismissal, in this situation protects
9    parties in the event that the arbitrator, upon conducting a full arbitrability inquiry under the
10   relevant law of the contract, determines that the claims are not arbitrable. If a court dismisses
11   claims, the statute of limitations is no longer tolled. As a result, dismissal of the claims could
12   leave parties without recourse if the statute of limitations period expires while the arbitrability
13   question is being resolved by the arbitrator. Accordingly, the Court should stay the Direct
14   Purchase Claims rather than dismiss them.

### III.   CONCLUSION

16   The Court should deny Defendants' motion to compel arbitration in part and deny their
17   request for dismissal in its entirety. Specifically, the Court should deny Defendants' motion to
18   compel arbitration as to the Joint and Several Claims because their assertion of arbitrability is
19   wholly groundless, and Microsoft Mobile should be allowed to proceed against Defendants on
20   the Joint and Several Claims. The Court should grant Defendants' motion to compel arbitration
21   as to the Direct Purchase Claims and should stay those claims while the arbitrator rules on the
22   arbitrability of those issues.

1  Dated: November 3, 2015.

2                                          */s/ B. Parker Miller*

3                                          James C. Grant (*pro hac vice*)
                                           Valarie C. Williams (*pro hac vice*)
4                                          B. Parker Miller (*pro hac vice*)
                                           Edward P. Bonapfel (*pro hac vice*)
5                                          ALSTON & BIRD LLP
                                           1201 West Peachtree Street
6                                          Atlanta, GA 30309
                                           (404) 881-7000 (T)
7                                          (404) 881-7777 (F)
                                           jim.grant@alston.com
8                                          valarie.williams@alston.com
                                           parker.miller@alston.com
9                                          ed.bonapfel@alston.com

10                                         Lance. A Termes
                                           Ryan W. Koppelman
11                                         ALSTON & BIRD LLP
                                           190 University Avenue, 5th Floor
12                                         East Palo Alto, CA 94303-2282
                                           (650) 838-2000 (T)
13                                         (650) 838-2001 (F)
                                           lance.termes@alston.com
14                                         ryan.koppelman@alston.com

15                                         *Attorneys for Plaintiffs Microsoft Mobile Inc. and*
                                           *Microsoft Mobile Oy*
16

17

18

19

20

21

22

23

24

25

26

27

28

MICROSOFT MOBILE'S OPP. TO PANASONIC         18          MASTER FILE NO. 4:13-MD-02420-YGR
AND SANYO DEFENDANTS' MOTION TO                          CASE NO. 4:15-CV-03443-YGR
DISMISS AND COMPEL ARBITRATION